## In the Matter of the Estate of DAVID R. MILLER, Deceased.

Surrogate's Court, Queens County, May 6, 1936.

*Stephen C. Huestis* [*Rocco J. Scalone* of counsel], for the executrix, Grace A. Miller.

*Harry M. Peyser* [*Jerome M. Hirsch* of counsel], for the State Tax Commission.

HETHERINGTON, S. Appellant is the widow of decedent, who died on September 30, 1932. In proceedings had to determine the fair market value of his estate, the schedules disclosed five bank accounts totaling approximately $29,000 standing in the joint names of decedent and his wife which were payable to either or the survivor. Appellant claimed a deduction of $16,120 from the gross estate upon the ground that, of the moneys on deposit

in the form recited, such sum originally belonged to and represented moneys earned by her in gainful occupations pursued during her married life. After conducting an oral hearing, at which the appellant was the only witness, the appraiser disallowed her claim. The *pro forma* order entered on his report taxed the entire fund, and from such order this appeal has been taken.

Authority for deducting the claim here made, if established, can be found in section 249-r of the Tax Law and particularly subdivision 5 which provides in substance that, in the case of joint bank accounts payable to the survivor, there shall be excluded from the gross estate " such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth." The burden of establishing that a part of the fund on deposit should be excluded from the gross estate by virtue of the exception stated in subdivision 5 is upon the appellant. If she cannot meet the obligation imposed upon her, the entire amount is taxable. (*Matter of Dwyer*, 149 Misc. 603.) To support the deduction claimed, appellant was bound to establish that the moneys in question originally belonged to her and formed a part of the funds on deposit in the joint accounts. The proof relied upon to establish these requirements consists of her statement made in Schedule " B " of the motion papers and her oral testimony given before the appraiser. Her claim, as scheduled, is to the effect that in 1896 she made an agreement with the decedent whereby he agreed that she might work on her own account and retain for her own use such moneys as she might earn. That for the first four years she earned as a dressmaker " about $780 per year, a total of $3,120; " from about 1900 to 1923 she was similarly engaged but " in a limited way and earned about $4,600," and from 1912 to September, 1932, she rented rooms and kept boarders and earned " approximately $8,400, making a total in all of $16,120, all of which was given to decedent for safe-keeping." Upon the hearing before the appraiser she testified that decedent had been continuously employed for thirty-three years by the board of education of the city of New York as a custodian of a public high school, and received a monthly salary of $262 for at least ten years preceding his death; that it was her practice, after paying the household expenses, to deposit the balance of his salary and her earnings in a joint account. Although she could have made withdrawals therefrom at her pleasure, she had never done so, except to make a down payment on the purchase of a house. She never maintained

a separate fund, and although she kept a " book account," she threw " it away about two or three years ago." No one, except the decedent, could tell how much she had deposited in bank. Her claim might be " a few dollars more or less because I have no record." When she first made money her husband told her she should use it for herself. In declining to do so she said " we might be sick, might have a family, I would put it in the bank. He knew that I could hold on to money better than he." Near the conclusion of her testimony she corrected her prior statement that she always made the deposits for her husband by admitting that once he " surprised " her by depositing $4,300 in a bank in both of their names. Her testimony, with respect to the number of lodgers and boarders she had, was vague and lacking in details.

The temptation to assert a claim of the character here presented, the difficulty of combating it, coupled with the fact that the underlying agreement was one between husband and wife made in the absence of witnesses, dictate that it should be established by clear and convincing evidence. Here, the proof relied upon consists solely of claimant's own declarations. Although her alleged earnings amount to a substantial sum, she produced no one who ever paid her a dollar for making a dress or renting a room. There is no independent proof that any one ever observed her engaged in either occupation. No books or records, showing materials purchased, bills paid, names of customers and roomers, receipts, expenses, profits made, are produced. The testimony as to number of lodgers is vague and unreliable. Nothing is produced which accurately shows the amount of her earnings. Her inability to do so is reflected in her own statement. Decedent's long and uninterrupted employment, earning capacity, thrift and ability to save when considered with claimant's admission that once he " surprised " her by depositing $4,300 in their joint names, cannot be overlooked in reaching a conclusion as to the source of the moneys in question. The statute contemplates a deduction of a specific and not an estimated amount. Appellant's proof as to the origin and amount of her earnings is too meagre and uncertain to warrant disturbing the determination of the appraiser.

Even though it be assumed that the appellant earned the amount claimed, the record is barren of convincing proof that in depositing the same in the joint accounts she intended to reserve any claim thereto. Her testimony discloses that she rejected decedent's suggestion that she should use her earnings for her personal use. She admitted that her purpose in depositing them was to provide a fund which would be available for sickness, births and other events common to family life. The situation disclosed here shows a commingling of resources with no thought

in mind of segregation or reservation of ownership. The failure to keep a record or an account of the alleged earnings and deposits made in the joint accounts raises a doubt that an agreement of the character claimed was ever made between decedent and his wife. My view is that the acts and conduct of the decedent and his wife indicate an intention merely to create a joint account payable, upon the death of either, to the survivor. Upon the entire record I find that the determination of the appraiser was correct, and that the order appealed from should be affirmed.